# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CONWAY JAY TURNBOUGH, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-CV-0193-CVE-PJC |
| ) | |
| TIMOTHY D. WANTLAND and ) | |
| JAMES W. ELY, JR., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

On April 11, 2016, plaintiff, a pro se prisoner in the custody of the Oklahoma Department of Corrections (DOC), filed this civil rights action pursuant to 42 U.S.C. § 1983 (Dkt. # 2). Plaintiff was granted leave to proceed in forma pauperis (Dkt. # 5), and he has paid his initial partial filing fee (Dkt. # 7).

Plaintiff is seeking monetary and equitable relief for alleged constitutional violations arising mainly from court proceedings in Craig County District Court. The defendants are Timothy Wantland, plaintiff's appointed defense attorney in the criminal cases at issue, and James W. Ely, Jr., the assistant district attorney who prosecuted the cases. Craig County Associate District Judge Gary Maxey presided over the proceedings.

On July 7, 2016, plaintiff filed an amended complaint, which he asserts is an addition to the original complaint (Dkt. # 9, at 1). "[A]n amended complaint 'supercedes an original complaint and renders the original complaint without legal effect.'" Mink v. Suthers, 482 F.3d 1244, 1254 (10th Cir. 2007), cert. denied, 522 U.S. 1165 (2008) (quoting In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000)). See also Davis v. TXO Production Corp., 929 F.2d 1515, 1517 (10th Cir.


1991). In the interest of judicial economy, however, the Court will discuss both the original and the amended complaints, instead of requiring plaintiff to file a second amended complaint to combine all the claims against the defendants.

### I.   Standard of Review

Federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). The court must identify any cognizable claim and dismiss any claim which is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B). To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. Id. at 555. However, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. Id. at 558. Twombly articulated the pleading standard for all civil actions. See Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009). The language of § 1915A(b)(1)-- "fails to state a claim upon which relief may be granted"--mirrors the language of Fed. R. Civ. P. 12(b)(6)--"failure to state a claim upon which relief can be granted." The court, therefore, applies the Rule 12(b)(6) standard to cases reviewed under § 1915A(b)(1). See Kay v. Bemis, 500 F.3d 1214, 1217-18 (10th Cir. 2007) (holding that the standard of review for dismissals under §

1915(e)(2)(B)(ii) is the same as the standard employed under Rule 12(b)(6)).

A pro se plaintiff's complaint must be broadly construed under this standard. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Haines v. Kerner, 404 U.S. 519, 520 (1972). The generous construction to be given the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). A reviewing court need not accept "mere conclusions characterizing pleaded facts." Bryson v. City of Edmond, 905 F.2d 1386, 1390 (10th Cir. 1990); see also Twombly, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (quotations and citations omitted). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

## II.     Factual Allegations

### A.     Original Complaint (Dkt. # 2)

Plaintiff alleges that a jury found him guilty in Craig County District Court Case No. CF-2006-33, and on November 15, 2007, Judge Maxey pronounced the sentence (Dkt. # 2 at 3).[1] Plaintiff claims Judge Maxey and defendant Ely, the assistant district attorney who prosecuted Case No. CF-2006-33, still were present in the courtroom when an officer came to escort plaintiff from the defense table. Id. Plaintiff told his attorney Mr. Wantland, "Get ready to saddle your horse

---

[1] Plaintiff was convicted of Indecent Exposure and Lewd Molestation in Case No. CF-2006-33, and he received a 20-year sentence. See Oklahoma State Courts Network at www.oscn.net.

3

again," which meant Wantland should prepare for another jury trial. Id.[2] Wantland allegedly looked at Judge Maxey and defendant Ely before loudly announcing, "Oh, those cases have already been dismissed." Id.

Plaintiff claims that after he was sentenced in Case No. CF-2006-33 and returned to jail, the defendants conspired with Judge Maxey to punish plaintiff for demanding a jury trial in Case No. CF-2007-108. Id. The defendants and the judge allegedly intended to deny plaintiff his due process rights to a jury trial in Case No. CF-2007-108. Id. at 5-6. Plaintiff asserts the judge and the defendants conspired to deny plaintiff his rights to call witnesses in his defense, to confront the State's witnesses, to plead, and to testify on his own behalf in Case No. CF-2007-108. Id.

Plaintiff contends that on that same day, the defendants and the judge decided to forge plaintiff's signature on a Plea of Guilty Summary of Facts for Aggravated Assault and Battery in Case No. CF-2007-108. Id. at 3, 8-15. The defendants then allegedly conspired to conceal the existence of this "fake" conviction and the Judgment and Sentence in Case No. CF-2007-108. Id. at 3, 16-25. Plaintiff claims that, contrary to state law, a copy of the Judgment and Sentence for Case No. CF-2007-108 was not delivered to the Sheriff's Office for delivery to the DOC when plaintiff was transferred to a DOC facility. Id. at 3. Plaintiff maintains the defendants were saving the "wicked surprise" of an unexpected conviction and sentence in Case No. CF-2007-108 until plaintiff was released from his incarceration for the sex offenses in Case No. CF-2006-33. Id. at 4.

---

[2] Plaintiff does not expressly state he was referring to the charges of Aggravated Assault and Battery in Case No. CF-2007-108, but the circumstances clearly indicate plaintiff was referring to that case.

Upon plaintiff's arrival at the Lexington Assessment and Reception Center, he allegedly was shown the Judgment and Sentence for Case No. CF-2006-33, but there was no Judgment and Sentence for Case No. CF-2007-108. Id. After a few weeks at the Lexington facility, the prison staff checked the OSBI system and discovered the "fake" conviction in Case No. CF-2007-108, but plaintiff claims he was not advised of this information. Id. Plaintiff then was transferred to Lawton Correctional Facility (LCF), which he claims is a "supermax" prison. Id. Plaintiff argues that without the conviction for Aggravated Assault and Battery in CF-2007-108, he would have been sent to a low-medium security prison, which would have been much safer for him as a convicted sex offender. Id. Plaintiff also alleges that if he had not been subject to the "fake" conviction in CF-2007-108 and resulting facility placement, he would not have been violently stabbed on six occasions while incarcerated at LCF. Id. Plaintiff further complains that the defendants conspired to fraudulently punish him by having him pay the costs in two other Craig County convictions, Case No. CM-2004-192 and Case No. CM-2005-111, which took 30 percent of his monthly gang pay. Id. at 5.[3]

Plaintiff claims he did not discover he had been convicted and sentenced to five years of supervised probation in Case No. CF-2007-108 until approximately October 2015, when a new law librarian allowed him to look at online dockets. Id. Plaintiff asserts that defendant Ely committed perjury by forging plaintiff's name three times on the Plea of Guilty Summary of Facts, and Ely also forged the court reporter's signature as a witness to the documents. Id. at 5, 11, 14-15. The plea summary for Case No. CF-2007-108 was dated and filed on November 15, 2007, the date of

---

[3] According to the Oklahoma State Courts Network at www.oscn.net, Craig County Case No. CM-2004-192 (Misdemeanor Assault and Battery) and Craig County Case No. CM-2005-111 (Resisting an Officer) were dismissed on November 15, 2007, with costs to the defendant.

plaintiff's sentencing in Case No. CF-2006-33. Id. at 8-21. Plaintiff has submitted an example of defendant Ely's signature for comparison to the contested document. Id. at 5, 24.

**B.      Amended Complaint (Dkt. # 9)**

Plaintiff's amended complaint essentially reiterates the § 1983 claims in the original complaint. He has added details regarding his incarceration at LCF, including statements that other inmates assaulted him three times and repeatedly spat in his food, making it inedible (Dkt. # 9, at 5). Plaintiff maintains he would not have been incarcerated at LCF and subjected to abuse from other LCF inmates, if the defendants had not conspired to secretly convict him in Case No. CF-2007-108.[4] As discussed below, the amended complaint also adds state tort claims and a claim concerning a protective order.

Plaintiff alleges in the amended complaint that defendant Ely is liable for the state tort of deceit for Ely's conspiracy with defendant Wantland and Judge Maxey. Id. at 3. This conspiracy allegedly arose when Wantland lied to plaintiff in the presence of Ely and Judge Maxey by saying Case No. CF-2007-108 had been dismissed. Id. Plaintiff claims the defendants were motivated to enter a "fake conviction" in Case No. CF-2007-108 "in order to create the Defense of Collateral Estoppel for the purpose of corruptly depriving the Plaintiff to [sic] Access to a United States District Court for Civil Rights violations committed by Craig County Deputy Jim Herman and Vinita Police Officers Sgt. Jim Curry and Officer Justin Richardson for False Arrest." Id. at 4. Plaintiff also argues that the conduct of Wantland, Ely, and Judge Maxey amounted to Obstruction of Justice in violation of 18 U.S.C. § 1512. Id.

---

[4] Although the conditions of plaintiff's confinement are not at issue in this matter, the Court notes that it is well settled that there is no constitutional right to incarceration in a particular correctional facility. Olim v. Wakinekona, 461 U.S. 238, 245 (1983).

The amended complaint expands plaintiff's claim regarding the costs that were assessed in two Craig County misdemeanor cases, CM-2004-192 and CM-2005-111.  Plaintiff alleges defendants Wantland and Ely conspired to subject him to punishment for these dismissed misdemeanor charges, "all in furtherance of a criminal enterprise engaged in unlawful debt collections practices, in violation of the plaintiff's due process rights as protected under the fourteenth amendment." Id. at 16.  Plaintiff contends "the Court Clerk's Office, Judge Gary Maxey, along with Defendant's [sic] Wantland and Ely were engaging in Fraud and Deceit, and unlawful Debt Collections in violation of Federal Racketeering Laws." Id.  Plaintiff further alleges defendants Wantland and Ely are liable for the state tort of fraud, because they conspired to cause plaintiff's money to be taken and applied to costs in dismissed criminal cases. Id. at 18.

Plaintiff asserts he did not know until 2015 that costs had been assessed against him in Case Nos. CM-2004-192 or CM-2005-111, or that his money was being sent to the Craig County Court Clerk for payment of the costs. Id. at 17.  He maintains there should have been no costs, because the cases were dismissed. Id.  As noted above, however, the cases were dismissed on November 15, 2007, with costs to the defendant.  See n.3.

Plaintiff next claims defendant Wantland is liable for damages caused by Wantland's acts taken in furtherance of Wantland's conspiracy with Craig County Judge H.M. Wyatt to deprive plaintiff of his First Amendment right to redress of his grievance (Dkt. # 9, at 19).  Plaintiff alleges that on November 12, 2014, he filed a state civil action against defendant Wantland for the tort of conversion in Craig County District Court Case No. CJ-2014-75. Id.  Plaintiff asserts he followed the directions for service provided by the Craig County Deputy Court Clerk, but on November 26, 2014, defendant Wantland refused delivery of the summons and petition in that case. Id. at 19-20.

7

Plaintiff contends Wantland conspired with Judge Wyatt to defeat plaintiff in obtaining any relief. Id. at 20. In furtherance of the conspiracy, defendant Wantland or Judge Wyatt allegedly instructed the Craig County Court Clerk to lose the proof-of-service "green card" that plaintiff sent to the Clerk's office for filing in his civil case. Id. The card was instead placed in plaintiff's closed criminal case, CF-2007-108. Id. When plaintiff advised the Court Clerk that he intended to make a claim on the Clerk's performance bond, Judge Wyatt entered an order directing that the card be placed into Case No. CJ-2014-75. Id. Plaintiff also claims that in furtherance of the alleged conspiracy, Judge Wyatt dismissed plaintiff's civil case, based on plaintiff's failure to perfect service upon the defendant within the time allowed by Oklahoma law. Id. Plaintiff's motion for default judgment and for summary judgment also were denied. Id. at 20, 45-46.

Plaintiff alleges that because of Judge Wyatt's lie about the lack of service in the civil case, plaintiff was denied relief in his lawsuit and became indebted in the amount of $318.70 to the Court Clerk in Case No. CJ-2014-75. Plaintiff apparently believes defendant Wantland should pay these expenses.

Plaintiff also claims in the amended complaint that on February 23, 2006, a deputy and a DHS worker "frogmarched" plaintiff's wife to the District Court Clerk's Office and ordered her to file a petition for a "protection order," threatening to take her youngest child if she did not comply. Id. at 4-5. Plaintiff alleges that on that same date another Craig County deputy falsely certified that plaintiff had been served with a copy of the protective order. Id. at 5.

### III. Analysis

### A. Conspiracy Claim

To state a claim for conspiracy against the defendants, "plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 533 (10th Cir. 1998). "Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim." Id. (quotation omitted). Further, "a deprivation of a constitutional right is essential to proceed under a § 1983 conspiracy claim." Snell v. Tunnell, 920 F.2d 673, 701-02 (10th Cir. 1990), cert denied, 499 U.S. 976 (1991). Thus, to prevail on such a claim, "a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." Dixon v. City of Lawton, 898 F.2d 1443, 1449 (10th Cir. 1990) (citations omitted). The Court finds plaintiff's conclusory allegations of a conspiracy do not meet the burden of pleading and proving a conspiracy or an actual deprivation of rights. Therefore, plaintiff's conspiracy claims against defendants Wantland and Ely are **dismissed without prejudice** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915A(b)(1).

### B. Defendant Ely's Prosecutorial Immunity

Plaintiff acknowledges that Judge Maxey enjoys "absolute immunity from damages liability for acts performed in [his] judicial capacities" in this § 1983 action. See Supreme Court of Virginia v. Consumers Union, 446 U.S. 719, 734-35 (1980). See also Dennis v. Sparks, 449 U.S. 24, 27 (1980). Plaintiff, however, fails to recognize that prosecutors possess prosecutorial immunity from § 1983 lawsuits for damages predicated on the performance of functions "in initiating a prosecution and in presenting the State's case." Imbler v. Pachtman, 424 U.S. 409, 431 (1976). See also

Buckley v. Fitzsimmons, 509 U.S. 259, 272 (1993). Because defendant Ely is immune from damages for alleged claims arising during Ely's prosecutorial actions, all § 1983 claims against Ely that are related to Ely's prosecution of plaintiff's criminal cases are **dismissed with prejudice** pursuant to 28 U.S.C. § 1915A(b)(2).

**C.     Claims Against Defendant Wantland**

To the extent plaintiff seeks monetary damages from defendant Wantland for plaintiff's alleged unconstitutional conviction in Case No. CF-2007-108 for Aggravated Assault and Battery, "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." Polk County v. Dodson, 454 U.S. 312, 325 (1981). Section 1983 provides as follows:

> Every person who, **under color of any statute, ordinance, regulation, custom, or usage, of any State** or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphasis added). The emphasized language establishes that to be liable under § 1983, the defendant must have acted under color of state law (i.e., he must have been a state actor). See, e.g., Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 724-25 (1989); Harris v. Champion, 51 F.3d 901, 909 (10th Cir. 1995). "[E]ven though the defective performance of defense counsel may cause the trial process to deprive an accused person of his liberty in an unconstitutional manner, the lawyer who may be responsible for the unconstitutional state action does not himself act under color of state law within the meaning of § 1983." Briscoe v. LaHue, 460 U.S. 325, 329 n.6 (1983). Therefore, any action taken by defendant Wantland in his capacity as plaintiff's defense counsel is not state

action for purposes of 42 U.S.C. § 1983.  Defendant Wantland is **dismissed with prejudice** for plaintiff's failure to state a claim upon which relief may be granted.  28 U.S.C. § 1915A(b)(1).

### D. Supplemental Jurisdiction Over State Claims

The preceding analysis disposes of plaintiff's claims arising under federal law, and, consequently, the basis for federal subject matter jurisdiction.  "Under these circumstances, the district court may decline to exercise continuing 'pendent' or supplemental jurisdiction over plaintiff's state claims."  Lancaster Independent Sch. Dist. No. 5, 149 F.3d 1228, 1236 (10th Cir. 1998) (citing 28 U.S.C. § 1367(c)(3); United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966)).  The Court, therefore, declines to exercise supplemental jurisdiction over plaintiff's state tort claims for deceit and fraud, as well as his claim that defendant Wantland is liable for his expenses in filing a civil lawsuit in Craig County District Court Case No. CJ-2014-75 against Wantland.  Plaintiff's state court claims are **dismissed without prejudice**.

### E. Protective Order

Plaintiff does not explain how the incident concerning his wife and the protective order violated his federal constitutional rights.  Furthermore, neither of the defendants is alleged to have participated in this incident.  For these reasons, the Court finds this claim should be **dismissed without prejudice** for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).

### F. Obstruction of Justice Claim

Finally, plaintiff's claims alleging obstruction of justice pursuant to 18 U.S.C. § 1512 and unlawful debt collection by the defendants are not appropriate for this lawsuit.  Such alleged violations of the federal criminal statutes cannot be raised in a § 1983 civil rights action.  Furthermore, there is no constitutional right to have someone criminally prosecuted.  Oliver v.

Collins, 914 F.2d 56, 60 (5th Cir. 1990).  Therefore, these claims are dismissed **with prejudice for failure to state a claim,** pursuant to 28 U.S.C. § 1915A(b)(1).

### IV.     First "Prior Occasion" Under 28 U.S.C. § 1915(g)

As noted above, plaintiff has been granted leave to proceed in forma pauperis.  In addition, the Court has found that plaintiff has failed to state a claim upon which relief may be granted.  As a result, this action shall be **dismissed** pursuant to 28 U.S.C. § 1915A(b)(1)-(2).  This dismissal shall count as plaintiff's first "prior occasion" under § 1915(g) (providing that "[i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury").

### V.      Filing Fee Obligation

Plaintiff is reminded that he remains obligated to pay in monthly installments the full filing fee for this case.  See 28 U.S.C. § 1915(b)(2).

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Plaintiff's conspiracy claims against defendants Wantland and Ely are dismissed **without prejudice** for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).

2. Defendant James W. Ely, Jr., is **dismissed with prejudice** from this action, based on Ely's prosecutorial immunity from § 1983 actions for damages predicated on Ely's prosecutorial functions, pursuant to 28 U.S.C. § 1915A(b)(2).

3. Defendant Timothy Wantland is **dismissed with prejudice** from this action for plaintiff's failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).

4. The Court declines to exercise supplemental jurisdiction over plaintiff's state court claims, and these claims are **dismissed without prejudice**.

5. Plaintiff's claim regarding the protective order is **dismissed without prejudice** for failure to state a claim, pursuant to 28 U.S.C. § 1915A(b)(1).

6. Plaintiff's federal criminal claims are **dismissed with prejudice**, pursuant to 28 U.S.C. § 1915A(b)(1).

7. The Clerk is directed to **flag** this dismissal as plaintiff's first "prior occasion" for purposes of 28 U.S.C. § 1915(g).

8. Plaintiff remains obligated to pay in monthly installments the balance of the **$350 filing fee** for this case.

9. Plaintiff's motion for U.S. Marshal's service of the summons and complaint (Dkt. # 10) and Plaintiff's motion for administrative order for U.S. Marshal's Service (Dkt. # 13) are **denied** as moot.

10. This is a final Order terminating this action.

11. A separate judgment shall be entered in this matter.

**DATED** this 28th day of September 2016.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE